Slip Op. 21-13

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHENZHEN XINBODA INDUSTRIAL CO., LTD.,** | |
| **Plaintiff,** | |
| **v.** | **Before: Claire R. Kelly, Judge** |
| **UNITED STATES,** | **Court No. 12-00174** |
| **Defendant,** | |
| **and** | |
| **FRESH GARLIC PRODUCERS ASSOCIATION ET AL.,** | |
| **Defendant-Intervenors.** | |

## <u>OPINION</u>

[Sustaining the results of the U.S. Department of Commerce's remand redetermination in the sixteenth administrative review of the antidumping duty order covering fresh garlic from the People's Republic of China.]

Dated: February 8, 2021

<u>Gregory S. Menegaz</u>, <u>J. Kevin Horgan</u>, and <u>Alexandra H. Salzman</u>, deKieffer & Horgan, PLLC, of Washington, DC, for plaintiff.

<u>Richard P. Schroeder</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the brief was <u>Reginald T. Blades, Jr.</u>, Assistant Director, <u>Jeanne E. Davidson</u>, Director, Jeffrey Bossert Clark, Acting Assistant Attorney General. Of counsel was <u>Brendan Saslow</u>, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Court No. 12-00174                                                                 Page 2

Michael J. Coursey and John M. Herrmann, Kelley Drye & Warren LLP, of
Washington, DC, for defendant-intervenors Fresh Garlic Producers Association,
Christopher Ranch L.L.C., The Garlic Company, Valley Garlic, and Vessey and
Company, Inc.

Kelly, Judge:   Before the court is the U.S. Department of Commerce's
("Commerce") remand redetermination pursuant to the court's order in Shenzhen
Xinboda Indus. Co. v. United States, 44 CIT __, __, 456 F. Supp. 3d 1272, 1291–92
(2020) ("Shenzhen Xinboda I").  See also Final Results of Redetermination Pursuant
to Ct. Remand Order in [Shenzhen Xinboda I], July 16, 2020, ECF No. 56-1 ("Remand
Results").  In Shenzhen Xinboda I, the court remanded in part Commerce's final
determination in the sixteenth administrative review of the antidumping duty
("ADD") order covering fresh garlic from the People's Republic of China ("PRC").  See
Shenzhen Xinboda I, 44 CIT at __, 456 F. Supp. 3d at 1291–92.  The court ruled that
Commerce's explanation for choosing Tata Tea's financial data was unreasonable
because Commerce did not confront evidence that the company is or may be the
beneficiary of subsidies.  See id. at 1290.  Moreover, the court held that if Commerce's
practice is to rely on the financial statement of a company that is or may be the
beneficiary of subsidies, so long as those subsidies were not previously found to be
countervailable by Commerce, Commerce should affirm its practice and explain why
it is reasonable, particularly in this case where there is evidence that the  financial
statements contain countervailable subsidies.   See id. at 1291.   On remand,
Commerce reconsiders its decision to rely on Tata Tea's unconsolidated financial
statements   to   calculate   Plaintiff,   Shenzhen   Xinboda   Industrial   Co.,   Ltd.'s

("Xinboda"), surrogate financial ratios.  See generally Remand Results.  Nonetheless,

Commerce continues to rely on Tata Tea's financial statements, explaining that its

practice is to disregard a financial statement only when the financial statement

shows that the company received a previously determined countervailable subsidy,

and that neither Tata Tea's financial statements, nor the loan documentation

Xinboda submitted, show that Tata Tea received a previously determined

countervailable subsidy.  See id. at 5–9, 12–14, 16–18.  Commerce also explains why

the application of its practice is reasonable in this case.  See id. at 6–9.  For the

following reasons, the court sustains Commerce's remand redetermination.

## BACKGROUND

The court presumes familiarity with the facts of this case, as set out in its

previous remand order, and now recounts the facts relevant to disposition of this

action.  See Shenzhen Xinboda I, 44 CIT at __, 456 F. Supp. 3d at 1276–78.  On

December 28, 2010, Commerce initiated its sixteenth administrative review of the

ADD order on fresh garlic from the PRC, for the period of review November 1, 2009

through October 31, 2010 ("POR"), at the request of FGPA and its individual

members.  See Initiation of Antidumping and Countervailing Duty Admin. Reviews

and Request for Revocation in Part, 75 Fed. Reg. 81,565, 81,568–69 (Dep't Commerce

Dec. 28, 2010).  Commerce selected Xinboda and Golden Bird as mandatory

respondents.[1]  See Fresh Garlic from [the PRC], 76 Fed. Reg. 76,375, 76,376 (Dep't

Commerce Dec. 7, 2011) (prelim. results of the 2009-2010 [ADD] admin. review)

("Prelim. Results"), and accompanying Issues & Decision Memo for the [Prelim.

Results], A-570-831, PD 134, (Nov. 30, 2011), ECF No. 54 ("Prelim. Decision Memo").[2]

On June 11, 2012, Commerce published its final results.  See Fresh Garlic from

the [PRC], 77 Fed. Reg. 34,346 (Dep't Commerce June 11, 2012) (final results of the

2009-2010 admin. review of the [ADD] order) ("Final Results"), and accompanying

Issues & Decision Memo for the [Final Results], A-570-831,

PD 220, (June 4, 2012), ECF No. 54 ("Final Decision Memo").  Given that Commerce

considers the PRC to be a non-market economy ("NME"), Commerce calculated

normal value by using India as the primary surrogate country to value factors of

production ("FOPs").  See Prelim. Decision Memo at 10; Final Decision Memo at 3–6.

Commerce relied on garlic prices from the APMC Bulletin, to value the garlic bulb

input, because the APMC Bulletin prices were publicly available, specific to the input,

---

[1] Initially, Commerce selected three additional exporters as mandatory respondents, but, following petitioners' withdrawals of their requests for review, Commerce rescinded review with respect to those exporters.  See Prelim. Results, 76 Fed. Reg. at 76,375–76.

[2] During the sixteenth administrative review, Commerce switched from manual to electronic filings of the administrative record.  Therefore, there are two indices, one manual and the other electronic, for the public and confidential documents.  On February 19, 2020, Defendant electronically filed indices to the public and confidential administrative records underlying Commerce's remand redetermination, on the docket, at ECF Nos. 54 and 53, respectively. All further references to administrative record documents are identified by the numbers assigned by Commerce in those indices and preceded by "PD" and "CD" to denote public or confidential documents.

largely contemporaneous with the POR, tax and duty exclusive, and represented a broad market average.  See Final Decision Memo at 11–36.    In addition, Commerce used Tata Tea's financial statements to calculate Xinboda's surrogate financial ratios, finding that its production processes—albeit of tea—were most similar to Xinboda's fresh garlic processing.  See Final Decision Memo at 40–45.  Commerce found no evidence in the financial statements that indicated the company was in receipt of subsidies that Commerce previously determined to be countervailable.  See Final Decision Memo at 42.

On April 17, 2020 the court remanded aspects of Commerce's final determination for further explanation or reconsideration.  See Shenzhen Xinboda I, 44 CIT at __, 456 F. Supp. 3d at 1291–92.  Shenzhen Xinboda I held that Commerce's explanation for relying on Tata Tea's financial statements was not reasonable in light of evidence that indicated Tata Tea may have received subsidies.  See id. at 1290. The court also remanded for Commerce to explain whether it has a practice to rely on the financial statement of a company that is or may be the beneficiary of subsidies, so long as those subsidies were not previously found by Commerce to be countervailable; and, if so, why it is reasonable to rely on such financial statements in this case, where there is evidence of countervailable subsidies in Tata Tea's financial statements.  See id. at 1291.

On remand, Commerce continues to rely on Tata Tea's unconsolidated financial statements to calculate Xinboda's surrogate financial ratios. Commerce explains that its practice is to only disregard financial statements when they contain explicit evidence of previously determined countervailable subsidies, see Remand Results at 5, and that here, there is no explicit evidence of previously determined countervailable subsidies in Tata Tea's financial statements. See id. at 10–11. Nonetheless, Commerce considers the documentation Xinboda submitted as evidence of countervailable subsidies, and finds that those documents do not undermine its determination to use Tata Tea's financial statements. See id. at 11–18.

In response, Xinboda argues Commerce "shall" disregard financial statements where it has a "reason to believe or suspect" that the company received countervailable subsidies. See Pl. [Xinboda's] Cmts. Opp. Commerce's Remand Redetermination at 7, Aug. 17, 2019, ECF No. 58 ("Xinboda's Br.").[3] According to Xinboda, Commerce's stated practice of only disregarding financial statements that contain explicit evidence of countervailable subsidies is inconsistent with the reason to believe or suspect standard provided by the relevant legislative history. See id. Xinboda claims that the documentation it submitted (containing loan or hypothecation agreements) is more than sufficient as evidence to provide a reason to believe or suspect that Tata Tea received countervailable subsidies. See id. at 8–9.

---

[3] Xinboda also argues that Commerce is incorrect to rely on the revised statutory scheme, as amended by 19 U.S.C. § 1677b(c)(5). See Xinboda's Br. at 4–7.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[4] and 28 U.S.C. § 1581(c) (2012),[5] which grant the court authority to review actions contesting the final determination in an administrative review of an ADD order.  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]"    19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

On remand, Commerce continues to rely on Tata Tea's financial statements because Commerce did not find explicit evidence of a subsidy program previously determined to be countervailable in the financial statements, or in the loan documentation Xinboda submitted.  See Remand Results at 6–18.  Xinboda challenges Commerce's stated practice, as well as the sufficiency of the evidence

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[5] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

supporting Commerce's conclusion.  <u>See</u> Xinboda's Br. at 4–20.  For the following reasons, the court sustains Commerce's determination.

In an NME, Commerce determines normal value based upon the best available information from a market economy country for the value of FOPs used in producing merchandise, plus an amount for general expenses and profit.  <u>See</u> 19 U.S.C. §§ 1677b(c)(1), (c)(3).  Relevant legislative history indicates that Commerce should "avoid using any prices which it has reason to believe or suspect may be dumped or subsidized prices" when valuing FOPs.  <u>See</u> Omnibus Trade and Competitiveness Act of 1988, Conference Report to Accompany H.R. 3, H.R. Rep. No. 100-576 at 590–91 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1623–24; <u>see also</u> <u>Nation Ford Chemical v. United States</u>, 166 F.3d 1373, 1378 (Fed. Cir. 1999).  Nonetheless, Commerce is not expected "to conduct a formal investigation to ensure that such prices are not dumped or subsidized," but is instead to "base its decision [as to whether there is 'reason to believe or suspect'] on information generally available to it at that time."  H.R. Rep. No. 100-576 at 590–91, 1988 U.S.C.C.A.N. at 1623–24.

In <u>Shenzhen Xinboda I</u>, the court instructed Commerce to state whether its practice is to rely on the financial statement of a company that is or may be the beneficiary of subsidies, so long as those subsidies were not previously found countervailable by Commerce, and explain why such practice is reasonable here, where there is evidence suggesting Tata Tea's statements contain subsidized prices. <u>See</u> <u>id.</u> at 1291.  In its remand determination Commerce states that its practice is,

and has been, to rely on the financial statement of a company that is or may be the

beneficiary of subsidies, so long as those subsidies have not previously been found to

be countervailable.  See Remand Results at 5–8 (citing e.g., Clearon Corp. v. United

States, 35 CIT 1685, 1688, 800 F. Supp. 2d 1355, 1359 (2011)); Certain Frozen Fish

Fillets from the Socialist Republic of Vietnam, 74 Fed. Reg. 29,473 (Dep't Commerce

June 22, 2009) (final results of the third new shipper reviews), and accompanying

Issues & Decisions Memo For the Final Results of the 3rd New Shipper Reviews:

Certain Frozen Fish Fillets from the Socialist Republic of Vietnam at 4–5, A-552-801,

(June 15, 2009); Certain New Pneumatic Off-The-Road Tires from the People's

Republic of China, 73 Fed. Reg. 40,485 (July 15, 2008) (final affirmative

determination of sales at less-than-fair-value and partial affirmative determination

of critical circumstances), and accompanying Issues & Decision Memo at 37–40, A-

570-912, (July 7, 2008).  Since the Final Results at issue here, Congress has codified

Commerce's practice in 19 U.S.C. § 1677b(c)(5).[6]  Commerce explains in its Remand

---

[6] In its remand redetermination, in addition to invoking its practice, Commerce
invokes Section 505 of the Trade Preferences Extension Act of 2015 ("TPEA"), which
added 19 U.S.C. § 1677b(c)(5), claiming it applies to its Remand Results.  Commerce
invokes the amendment because the remand redetermination was a determination
made after the effective date of the TPEA, because § 1677b(c)(5) codified the agency's
prior practice, and, because the court in its opinion cited to § 1677b(c)(5) as being
applicable.  See Remand Results at 5–11; Shenzhen Xinboda I, 44 CIT at __, 456 F.
Supp. 3d at 1289.  Shenzhen Xinboda I did not need to reach the question of whether
the amendment applies to remand determinations decided after the amendment in a
case  where  the  final  results  were  issued  prior  to  the  amendment,  as

(footnote continued)

<u>Results</u> that, pursuant to its practice, Commerce looks to its past countervailing duty

("CVD") findings as evidence that a company received a countervailable subsidy.  <u>See</u>

<u>Remand Results</u> at 5–6.  If the financial statements or other documents refer to "a

specific subsidy program found to be countervailable in a formal CVD determination,"

only then will Commerce exclude the company's financial statements from

consideration.  <u>See</u> <u>Remand Results</u> at 8.

      Commerce explains that its view that it will only disregard financial

statements where there is explicit evidence of a subsidy previously determined to be

countervailable comes from the use of the phrase "reason to believe or suspect" in the

legislative history.[7]  Commerce defends the reasonableness of its practice, explaining

---

the amendment codifies the agency practice.  <u>See</u> <u>Jacobi Carbons AB v. United States</u>,
42 CIT __, __, 313 F. Supp. 3d 1308, 1331 & n.32 (2018); <u>Weishan Hongda Aquatic
Food Co. v. United States</u>, 41 CIT __, __, 273 F. Supp. 3d 1279, 1286 & n.7 (2017).
Therefore, the court, sua sponte, reconsiders its decision to cite § 1677b(c)(5), <u>see</u>
<u>Shenzhen Xinboda I</u>, 44 CIT at __, 456 F. Supp. 3d at 1289, and determines that doing
so was unnecessary because Commerce's practice prior to the amendment was the
same as the standard set forth in § 1677b(c)(5).  Accordingly, the court did not need
to reach the issue of whether the statute would apply to a remand determination of
final results issued prior to the amendment.  <u>See</u> USCIT R. 60 ("The court may
correct. . . a mistake arising from oversight. . . whenever one is found in a judgment,
order, or other part of the record. The court may do so on motion or on its own, with
or without notice.").  Moreover, because the applicable standards before and after the
amendment are the same, the court's error in citing the statute was a harmless error
and does not affect the court's prior remand order.  <u>See</u> USCIT R. 60 ("At every stage
of the proceeding, the court must disregard all errors and defects that do not affect
any party's substantial rights.").

[7] Commerce explains that financial statements, which are guided by Generally
Accepted Accounting Principles are the best evidence of a company's receipt (or non-
receipt) of previously determined countervailable subsidies.  <u>See</u> <u>Remand Results</u> at
6–7.  Accordingly, Commerce examines financial statements for evidence of a subsidy
program that Commerce has previously countervailed.  <u>See</u> <u>id.</u> at 7.

that this phrase is the same "standard for making a preliminary affirmative determination of countervailable subsidies in a CVD investigation." <u>Remand Results</u> at 7 (citing 19 U.S.C. § 1671b(b)(1) which states that "the administering authority shall make a determination, based upon the information available to it at the time of the determination, of whether there is a reasonable basis to believe or suspect that a countervailable subsidy is being provided with respect to the subject merchandise."). The combination of the particular standard used for an affirmative CVD determination combined with the admonition that Commerce was not to conduct a formal investigation leads Commerce to its conclusion that it was to only disregard statements that had previously been determined as countervailable.[8]   <u>See</u> <u>id.</u>

---

[8] Plaintiff argues that the post-TPEA statutory scheme grants greater discretion to Commerce than Congress permitted Commerce to exercise before the amendment, and therefore claims that under the statute in effect at the time of the <u>Final Results</u>, Commerce lacks discretion to require explicit evidence of subsidies prior to disregarding financial statements.  Plaintiffs argue:

> Congress initially mandated that Commerce "shall" disregard financial statements tainted by subsidization, but subsequently broadened Commerce's discretion to "may disregard" such financial statements. [<u>Compare</u>] H.R. Rep. No. 100-576, at 590-91 (1988) (Conf. Rep.) ("In valuing [the factors of production], Commerce shall avoid using any prices which it has reason to believe or suspect may be dumped or subsidized prices'", [<u>with</u>] 19 U.S.C. § 1677b(c)(5) ("In valuing the factors of production…, the administering authority may disregard price or cost values without further investigation if the administering authority has determined that broadly available export subsidies existed or particular instances of subsidization occurred.").  Since the contested administrative review final results were issued prior to the passing of

(footnote continued)

Commerce's parsing of these two provisions in the legislative history is logical and the court cannot say that Commerce acted unreasonably in light of the statutory provision under which Commerce acted to reach its <u>Final Results</u>.

Commerce further explains that its practice of only rejecting financial statements that evidence a previously determined countervailed subsidy is reasonable because, if Commerce had to reject every financial statement which mentioned a subsidy—as opposed to only rejecting those with explicit evidence of a previously determined countervailable subsidy—some circumstances might require Commerce to resort to less appropriate financial statements, leading to inaccuracies.

---

TPEA in 2015, Commerce must, as indicated in the word "shall" in the legislative history, disregard Tata Tea's financial statement because it has "reason to believe or suspect" that Tata Tea's price was a subsidized price. [See <u>Remand Results</u>] at 13 (admitting that "Tata Tea may have received subsidies under a previously countervailed program.").

Xinboda's Br. at 6. Plaintiff's argument is mistaken. First, Plaintiff compares the language of the TPEA amendment to the language of the legislative history to different subsections of § 1677b. Commerce's discretion to identify the best information available to value factors of production derives from § 1677b(c)(1), (c)(3) (providing for the calculation of normal value in NMEs generally using FOPs). Whether Commerce's interpretation is reasonable is informed by the legislative history. Moreover, in adopting its interpretation Commerce explains its interpretation flows from the language in the legislative history which invokes a "reason to believe or suspect standard" which Commerce claims requires that there have been an already determined countervailable subsidy. <u>Remand Results</u> at 7. Commerce then invokes the "may" language in TPEA as a confirmation of the discretion previously exercised by Commerce. <u>Remand Results</u> at 10.

Court No. 12-00174                                                    Page 13

See Remand Results at 8–9.[9]  Moreover, Commerce explains that if, in the course of

an ADD review, it had to conduct a full investigation of whether a company received

a countervailable subsidy, it would not be able to meet its deadlines.  See Remand

Results at 7.

     As requested by the court, Commerce further explains its practice as

reasonable in this case.   Here, Commerce re-examined Tata Tea's financial

statements and determined that the financial statements contain no evidence of a

previously countervailed subsidy program. See Remand Results at 10–11.  Commerce

further explains that Xinboda's proffered loan documentation does not demonstrate

that Tata Tea received a previously determined countervailable subsidy.  See id. at

14–16; Shenzhen Xinboda I, 44 CIT at __, 456 F. Supp. 3d at 1290–91.  Rather, in

order to verify whether the loan agreements relate to a countervailable subsidy,

_____

[9] Commerce states that:

     [I]f the "reason to believe or suspect" standard, and by extension section
     773(c)(5) of the Act, requires Commerce to reject every financial
     statement that merely mentions the word 'subsidy,' or even words that
     could  be interpreted as naming a recognized subsidy program,
     Commerce would, in many circumstances, have no record financial
     statements from which to calculate surrogate financial ratios. This
     would likely require Commerce to resort to less desirable financial
     statements which may lead to inaccuracies in calculating financial
     ratios.  In this review, if the "reason to believe or suspect standard" from
     the 1988 legislative history were interpreted to require such a practice,
     there would be no financial statements on the record from which to
     determine surrogate ratios.

Remand Results at 8–9.

"Commerce would need to conduct a full investigation of these loans." See Remand Results at 14.

Commerce also confronts evidence that it has previously found certain export credits and packing credits—the type of financial assistance that is the subject of the loan or hypothecation agreements—to be countervailable. See Remand Results at 15 (citing Polyethylene Terephthalate Film, Sheet, and Strip ("PET Film") from India, 73 Fed. Reg. 75,672 (December 12, 2008) (final results of [CVD] admin. rev.), and accompanying Issues & Decision Memo in the Final Results of the [CVD] Admin. Rev. of [PET] Film from India at 4–11, C-533-825, (Dec. 5, 2008) ("PET Film from India"); Certain Hot-Rolled Carbon Steel Flat Products from India, 74 Fed. Reg. 20,923 (May 6, 2009) (final results and partial rescission of [CVD] admin. rev.), and accompanying Issues & Decision Memo: Final Results and Partial Rescission of [CVD] Admin. Rev. at Cmt. 4, C-533-821, (Apr. 29, 2009) ("Hot-Rolled Carbon Steel from India")). Nonetheless, Commerce explains that export and packing credits are not always countervailable as they are considered a type of short-term credit. See Remand Results at 15–16.[10]   In this case, Commerce distinguishes the hypothecation agreements invoked by Xinboda from the Government of India's Pre- and Post-Shipment Program, previously found to be countervailable by Commerce. See

---

[10]  Moreover, Commerce explains, not only are export credits not always countervailable, but also, here, it is unclear whether Tata Tea was merely eligible for the export credits, or whether it actually received them. See Remand Results at 8, 14–16.

Court No. 12-00174                                              Page 15

Remand Results at 16–18.  The loan or hypothecation agreements provide collateral

for the packing and export credits and there is no evidence that they relate to a

program Commerce has previously found to be countervailable.[11]

Xinboda argues that although the record may lack evidence that the programs

involved were previously countervailed, there is sufficient evidence to meet the

"reason to believe or suspect standard."  Xinboda Br. at 11.  Yet, Xinboda does not

point to any evidence that Commerce's application of its practice in this instance is

unreasonable.  Commerce addresses the record evidence that the programs are

countervailable finding that evidence inconclusive.  Specifically, Commerce addresses

the court's concern that at least one of the loans was provided at below market rate,

---

[11] Xinboda argues that the hypothecation agreements specifically reference "pre-shipment and post-shipment credits[,]"  Xinboda's Br. at 15, and asserts that "it is simply untenable for Commerce to argue that these loan agreements . . . do not relate to the Pre- and Post-Shipment program previously found to be countervailable."  See id. at 17.  Despite Xinboda's protestations, Commerce's position is not unreasonable. There may be various types of pre- and post-shipment credits that are distinct from the specific Pre- and Post-Shipment Program Commerce has previously determined to be countervailable. The hypothecation agreements quoted by Xinboda do not specifically refer to the Government of India's Pre- and Post-Shipment Program; rather they state

> [I]n consideration of the Bank having granted . . . by way of overdrafts,
> cash credits, term loans, pre-shipment and post-shipment credits,
> opening of letters of credits, issuing of guarantees including deferred
> payment guarantees and indemnities, negotiations and discounting of
> demand and or usance bills and cheques inland as well as foreign and
> such other facilities as may be agreed[.]

Xinboda's Br. at 15 (citing Xinboda Surrogate Value Submission – Final at Ex. 33, PD 149-151, 155, (Jan. 6, 2012)).  Commerce is within its discretion to find such language insufficient to establish that a previously determined countervailable subsidy was at issue in Tata Tea's financial statements.

see Shenzhen Xinboda I, 44 CIT at __, 456 F. Supp. 3d at 1290, explaining that on the record provided the provision of loans at below market rate cannot actually be verified.  See Remand Results at 17.  Although, Xinboda can point to evidence that might support an alternative conclusion, the court must sustain Commerce's determination if the record reasonably supports it.  See King Supply Co., LLC v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) ("King Supply Co.") (noting that "even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." (citations omitted)).

Conversely, Xinboda continues to argue that Garlico is the "most suitable" Indian company to rely on as a surrogate for Xinboda.  See Xinboda's Br. at 20–25. Even if Xinboda can identify financial statements that would be reasonable alternatives for Commerce to select, it is not this court's role to identify the most suitable choice.  See King Supply Co., 674 F.3d at 1348 (Fed. Cir. 2012).  This court is tasked with determining whether Commerce's choice was reasonable.  Xinboda has not identified any evidence that undermines the reasonableness of Commerce's choice.  In sum, Commerce's continued reliance on Tata Tea's financial statement based on its practice to only exclude relevant financial statements from consideration where such statements have evidence of previously determined countervailable subsidies is reasonable.

Xinboda also argues that if Commerce may use Tata Tea's financial statements, then it should also use other statements it chose to disregard.  See Xinboda's Br. at 17.  Yet, Commerce specifically found that some of these statements did contain previously countervailed subsidies. See Final Decision Memo at 43–45 & n.198.  Xinboda challenges the reasonableness of those determinations given the evidence at issue.  See Xinboda's Br. at 18–19.  In doing so, Xinboda is asking this court to reweigh the evidence which this court cannot do.  See Downhole Pipe & Equipment, L.P. v. United States, 776 F.3d 1369, 1376–77 (Fed. Cir. 2015).

## CONCLUSION

For the foregoing reasons, Commerce's Remand Results are supported by substantial evidence and comply with the court's order in Shenzhen Xinboda I, and are therefore sustained.  Judgment will enter accordingly.

 /s/ Claire R. Kelly  
Claire R. Kelly, Judge

Dated:        February 8, 2021  
               New York, New York